**State v. Ambrosia**
*[Cite as 3 AOA 137]*

*Case No. L-88-058*
*Lucas County, (6th)*
*Decided May 4, 1990*

*John F. Potts, for Appellant.*

*Anthony G. Pizza, Prosecuting Attorney, and Thomas N. Tomczak, for Appellee.*

HANDWORK, P.J.

This matter is before the court upon appeal of the January 29, 1988 judgment of the Lucas County Court of Common Pleas sentencing appellant, Ronald Ambrosia, to life imprisonment for violation of R.C. 2907.02.

Appellant was indicted on June 17, 1987, for three counts of violating R.C. 2907.02. It was alleged that appellant compelled his minor stepdaughter, Monica Ambrosia, to submit by force or threat force to sexual conduct. The first count alleged that such conduct occurred in 1984. The second count alleged that such conduct occurred in 1985. The third count alleged that such conduct occurred in 1986. The indictment was subsequently expanded upon in an Amended Bill of Particulars wherein the state identified the dates of the alleged offenses as occurring between January 1, 1984, and December 31, 1984; between January 1, 1985, and December 31, 1985; and between January 1, 1986, and August 1986. The state further explained that the offenses allegedly occurred at or near 5651 Knightsbridge, Toledo, Ohio, the home of appellant and his family, including the victim. Appellant filed various motions to compel discovery or dismiss the indictment asserting that more specific dates were necessary for the defense to adequately prepare their case, but each motion was denied. The state asserted that it was unable to be more specific because the victim could not recall the dates of any of the offenses. Appellant filed a notice of claim of alibi although he did not present any alibi during trial. In addition, the state's motion *in limine* to exclude evidence regarding the results of appellant's psychological and physiological tests was granted. The case proceeded to trial by jury, and appellant was found guilty of all three counts.

Appellant asserts that the following errors occurred in the trial below:

"I. IT CONSTITUTED ERROR TO DENY THE MOTION TO DISMISS.

"II. IT CONSTITUTED ERROR TO DENY THE MOTION FOR A MISTRIAL.

"III. IT CONSTITUTED ERROR TO DENY THE MOTION FOR A NEW TRIAL.

"IV. THE VERDICTS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND/OR CONTRARY TO LAW.

"V. THE FINDING THAT THE VICTIM WAS COMPELLED TO SUBMIT BY FORCE OR THE THREAT OF FORCE IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

"VII. IT CONSTITUTED PLAIN ERROR FOR THE TRIAL COURT NOT TO INSTRUCT ON THE NECESSITY FOR A UNANIMOUS VERDICT.

"VIII. IT CONSTITUTED ERROR TO REFUSE TO ALLOW APPELLANT TO ADDUCE EVIDENCE WITH RESPECT TO THE PENILE PLETHYSMOGRAPH TEST AND RELATED PSYCHOLOGICAL TESTING.

"IX. IT CONSTITUTED ERROR TO REFUSE TO ALLOW APPELLANT TO ADDUCE EVIDENCE WITH RESPECT TO THE MMPI AND RELATED PSYCHOLOGICAL TESTING."

In his first assignment of error, appellant alleges that he was denied his constitutional right under the Sixth Amendment to the United States Constitution and the Ohio Constitution to

be notified of the nature and cause of the accusation. More specifically, appellant alleges that the failure to identify the specific dates on which the rapes occurred prevented appellant from preparing a viable defense. Furthermore, appellant alleges that an unanimous verdict is impossible where the indictment does not classify each specific indecent as a separate count. Therefore, appellant contends that the indictment should have been dismissed prior to trial. In support of his argument, appellant relies on Ohio case law and cases from other jurisdictions; namely, *Knight* v. *State* (1987), 506 So. 2d 1182; *People* v. *MacAfee* (1980), 76 App. Div. 2d 157; and *United States* v. *Parente* (D. Conn. 1978), 449 F. Supp. 905.

In order to determine what information must be included within an indictment under Ohio law, we look to R.C. 2941.01 *et seq.* R.C. 2941.03(E) provides that an indictment is sufficient "if it can be understood therefrom * * * [t]hat the offense was committed at some time prior to the time of finding of the indictment * * *." Each count of the indictment must contain "a statement that the accused has committed some public offense therein specified." R.C. 2941.05. An indictment is valid even if it states the time imperfectly or omits the time where the time is not an essential element of the offense. R.C. 2941.08(B) and (C). Other defects in the indictment do not render it invalid where there was no prejudice to the defendant. R.C. 2941.08(K).

Crim. R. 7 also governs the issue of what information must be included within the indictment. That section reads as follows:

"(B) Nature and Contents. The indictment or the information shall be signed by the prosecuting attorney or signed in his name by an assistant prosecuting attorney, and shall contain a statement that the accused has committed some public offense therein specified. Such statement may be made in ordinary and concise language without any technical averments or any allegations not essential to be proved. It may be in the words of the applicable section of the statute as long as the words of that statute charge an offense, or in any words sufficient to give the accused notice of all the elements of the offense with which is charged. It may be alleged in a single count that the means by which the defendant committed the offense are unknown or that he committed it by one or more specified means. Each count of the indictment or information shall state the numerical designation of the statute which the defendant is alleged therein to

have violated. Error in the designation or its omission shall not be ground for dismissal of the indictment or information, or for reversal of a conviction, if the error or omission did not mislead the defendant to his prejudice."

This rule does not indicate that the time and date of the alleged offense must be included within the indictment.

The Supreme Court of Ohio has likewise held that the exact time and date of the alleged offense need not be specified in the indictment unless the time and date are essential elements of the offense. *State* v. *Sellards* (1985), 17 Ohio St. 3d 169, 171. The *Sellards* case involved an indictment which charged the defendant with three counts of rape and four counts of importuning. In all seven counts, it was alleged that the defendant has engaged in certain illegal conduct within a specified time frame. While the court recognized that more specific dates need not be included within the indictment or the bill of particulars, it did require that the state disclose such information in a bill of particulars if known. *Id.* at the syllabus. Because there was no proof in the *Sellards* case that the state deliberately withheld the time and date of the alleged crime and the defendant never filed notice of its intent to rely on an alibi, the court found that the indictment was valid and upheld the conviction. *Id.* at 172. Furthermore, the court held that the general rule could be overcome if the defendant could demonstrate that his defense was materially prejudiced by the lack of specificity regarding the time and date of the alleged offense. *Id.*

Other appellate courts have followed the same reasoning that where no evidence was admitted which indicated that the defendant may have been elsewhere during part of the time period covered by the indictment, no prejudice results from the failure to specify the date and time of the alleged crime in the indictment. *State* v. *Barnecut* (1988), 44 Ohio App. 3d 149 and *State* v. *Gingell* (1982), 7 Ohio App. 3d 364.

In two of the cases cited by appellant, *Knight* v. *State, supra,* and *People* v. *MacAfee, supra,* the state's criminal procedures mandated that the time and date of the alleged offense be specifically identified. Thus, these two cases are distinguishable from the case before us because Ohio's criminal rules do not contain a similar requirement.

Finally, appellant cites to *United State v. Parente, supra,* in support of his argument that the indictment must be more specific. The *Parente* court held that an indictment, which

alleged that certain crimes occurred in the "summer months of 1974" was too indefinite and, therefore, was insufficient. However, this case is only persuasive authority in support of appellant's argument. Following Ohio's statutes and Ohio common law, we find that the indictment in this case was sufficient.

Wherefore, we find appellant's first assignment of error not well-taken.

In his second assignment of error, appellant contends that the lower court should have granted a mistrial after the victim testified that one of the rapes occurred on a Saturday night in 1986 toward the end of the school year, a date more specific than that listed in the indictment.

On December 7, 1987, an in-chambers conference was held regarding appellant's motion to compel discovery or dismiss the indictment and motion for an order to disclose grand jury matters. During the conference, appellant acknowledged that he had been notified that the victim had somewhat identified the day of one of the rapes as a Saturday night near the end of the school year. Appellant moved for a continuance of the trial in order to prepare his defense. In light of the fact that appellant might have an alibi as to that particular night, the court continued trial of the case until January 19, 1988.

As we have already stated, specific information regarding the date and time of the offense need not be included in the indictment but must be disclosed by the prosecution, if known. *State v. Sellards, supra* at 177. Although the bill of particulars was not amended in this case to reflect the more specific identification of the date and time of one of the rapes, appellant was notified of this specific information. Furthermore, the continuance gave appellant ample time to prepare his defense in light of this information. Therefore, there was no basis for the granting of a new trial. Appellant's second assignment of error is found not well-taken.

In his third assignment of error, appellant contends that a new trial should have been granted because appellant was prejudiced by the failure of the state to disclose the information it had regarding the dates and times of the rapes. For the same reasons set forth above with regard to the second assignment of error, we find appellant's third assignment of error not well-taken.

In his fourth assignment of error, appellant argues that the verdict was either contrary to the manifest weight of the evidence or contrary to law because a unanimous verdict was impossible where each count of the indictment included more than one offense.

We find no merit to appellant's argument. In this case, the state could have charged appellant with rape for each offense which occurred throughout the years indicated. Instead, the state elected to charge appellant with only three offenses. Each offense involved intermittent sexual contact with the victim during a particular year. Therefore, in order to convict appellant, the court instructed the jury that it had to believe the victim's testimony that appellant forced her to perform fellatio throughout the years indicated. The court also instructed the jury that it must unanimously agree with regard to each count of the indictment that the state had proven each count beyond a reasonable doubt. The state was only required to prove that the actual dates of each incident were within the time frame set out by the indictment. *State v. Fowler* (1985), 27 Ohio App. 3d 149, 154. Since the jury found appellant guilty on each count, we conclude that the verdict was unanimous.

Accordingly, we find appellant's fourth assignment of error not well-taken.

In his fifth assignment of error, appellant argues that the jury's finding that force or threat of force was used to compel the victim to submit to the offense was contrary to the manifest weight of the evidence. Appellant contends that evidence of the use of force or threat of force on one occasion does not establish the use of force or threat of force on other occasions.

If substantial evidence was presented "upon which a jury could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt," an appellate court will not reverse the jury's verdict. *State v. Eley* (1978), 56 Ohio St. 2d 169, at the syllabus. When a challenge has been made that the verdict is contrary to the manifest weight of the evidence, we must review the evidence to determine whether there was substantial evidence presented "'which, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt.'" *Id.* at 172 (citation omitted.)

"Force" is defined in R.C. 2901.01 as: "any violence, compulsion, or constraint physically exerted by any means upon against a person or thing." In connection with the rape of a child, the degree of force necessary to commit rape by force will vary according to the age, size, and strength of the child, as well as the relationship between the victim and the rapist. *State v. Eskridge* (1988), 38 Ohio St. 3d 56, paragraph one of the

syllabus. Threat of force may be shown by evidence which indicates that the will of the child was overcome. *id.* and *State* v. *Fowler, supra.*

In this case, the victim testified as to the events of the last incident which occurred on a Saturday night at the end of the school year (the end of March to the beginning of June) in 1986 when appellant came into her room and laid down beside her despite her objection. She testified that appellant "started, you know, rubbing me and then he went down below and he starting kissing" her vagina. She further testified that throughout 1984 and 1985 appellant had requested that she perform fellatio. She had refused, but she did it anyway because "he would usually threaten me. He would usually grab a hold of my wrist or my hair." She also testified that she was afraid to tell anyone because "he would usually tell me not to tell anybody, because if I did, something would happen. Something would happen and it would scare me when he would say that.* * * I was afraid of what he would do [if she told] because it was always seemed he always loose [sic] his anger really easy and I was afraid and I kinda had some thoughts that people wouldn't--my mom wouldn't believe me or something." Furthermore, she testified that she didn't feel anything was wrong with what appellant asked her to do while she was younger, but as it continued, she did.

We find that this evidence was sufficient for the jury to reasonably conclude that the rapes were accomplished by force or threat of force. It is not necessary that the state prove the details of how each incident involved force. It is clear from the testimony that the victim never consented to any of the rapes. Wherefore, we find that the jury's finding that the rapes were committed by force or threat of force was not contrary to the manifest weight of the evidence. We therefore find appellant's fifth assignment of error not well-taken.

In his sixth assignment of error, appellant argues that the court erroneously refused to allow a jury instruction on the lesser included offense of gross sexual imposition. Appellant contends it was possible for the jury to believe the victim's testimony in part and, therefore, that only conduct sufficient to establish gross sexual imposition occurred.

While gross sexual imposition is a lesser included offense of rape, some evidence must be presented to warrant a jury instruction as to that offense. *State* v. *Johnson* (1988), 36 Ohio St. 3d 224, paragraph one of the syllabus and at 226.

Under R.C. 2907.05, gross sexual imposition is an offense involving sexual contact. Sexual contact is defined as a "touching of an erogenous zone of another * * * for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B) Rape, on the other hand, involves sexual conduct with another. R.C. 2907.02. Sexual conduct requires some form of intercourse, fellatio or cunnilingus between two persons. R.C. 2907.01(A).

In the case before us, there is some evidence which would support a finding that the last incident involves sexual contact rather than sexual conduct. However, all other evidence presented by the state indicated that sexual conduct was involved in the other incidences. Furthermore, since appellant denied any sexual contact or conduct with the victim, the jury must either believe the victim's testimony that she was raped or appellant's testimony that he is innocent. There was no evidence presented whatsoever to suggest that the victim confused fellatio with a mere touching. See. *State* v. *Johnson, supra.* Therefore, since evidence was presented for each count to establish that the victim was raped, there was no prejudice to appellant by the lower court's refusal to instruct as to a lesser included offense.

Wherefore, we find appellant's sixth assignment of error not well-taken.

In his seventh assignment of error, appellant argues that it was plain error for the lower court not to instruct the jury that a unanimous verdict was needed. Appellant again raises the arguments the jury needed to agree on the occurrence of a rape for each year.

Upon a review of the transcript, however, we find that the lower court did instruct the jury that a unanimous verdict on each count was necessary. The lower court did not compel the jury to agree as to the date, time, or events of the incidents they believed established the rape for each of the years indicated. Such an instruction would have been erroneous. The jury was only required to find that the victim's testimony was true in order to find appellant guilty of raping the victim intermittently throughout the years indicated in each count.

Accordingly, we find appellant's seventh assignment of error not well-taken.

In his eighth assignment of error, appellant argues that the lower court erred by prohibiting appellant from introducing into evidence the results of a penal plethysmograph test. The test involved the measurement of penal tumescence

when the subject was left alone in a room and exposed to a variety of visual and auditory sexual stimuli. A comparison is then made between the subject's responses to exposure to deviant sexual stimuli and non-deviant materials. The purpose of the test was to determine whether appellant had a predilection to pedophilia. Appellant sought to use the results of the test as evidence of his good character. This character evidence was intended to be used by appellant as circumstantial evidence of appellant's innocence. The lower court refused to admit this evidence into the record because it found the test to be unreliable in its attempt to classify a person as a pedophile.

In order for a reviewing court to review the lower court's ruling on a motion *in limine,* the alleged error must be preserved for review. An order granting or denying a motion *in limine* is an interlocutory order regarding an evidentiary issue. *State* v. *Leslie* (1984), 14 Ohio App. 3d 343, 344. Therefore, in order to preserve the issue for review, the party whose evidence was excluded must introduce the evidence at trial and object to its exclusion at that time.

In this case, the court granted the state's motion *in limine* to exclude any evidence regarding psychological or physiological testing. Appellant never attempted to introduce the testimony of the expert or the results of the penal plethysmograph that the expert conducted. Thus, this alleged error was not preserved for review.

Wherefore, we find appellant's eight assignment of error to be moot and, therefore, not well-taken.

In his ninth assignment of error, appellant argues that the court erred by excluding from evidence the testimony of Dr. Wakefield, a psychologist. Dr. Wakefield would have testified as to appellant's character traits and her opinion as to whether appellant possessed similar character traits to a pedophile. Dr. Wakefield's opinion was base upon the results of the Minnesota Mulitphase Personality Index (MMPI) and other testing she and her husband conducted.

Evid. R. 104(A) provides that the trial judge must determine the issues of admissibility of evidence. Issues relating to the weight and credibility of admitted evidence are left to the jury. Evid. R. 104(E). Character evidence is admissible in a criminal case where the defendant seeks to establish a pertinent trait of his character. Evid. R. 404(A) (1). However, such evidence must be in the form of reputation or opinion evidence. Evid. R. 405(A). However, even reputation and opinion evidence as to the

defendant's sexual activity is inadmissible in a rape case under Ohio's rape shield statute. R.C. 2907.02(D). Furthermore, specific instances of conduct may not be used as proof of character where character is used as circumstantial evidence. See, Staff Notes to Evid. R. 405(B).

In this case, appellant seeks to introduce the expert opinion of a clinical psychologist who would have basically testified that based upon her analysis of the results of the clinical interview, psychological testing, and physiological testing, she would conclude that appellant did not have the characteristics of a pedophile. We find such expert opinion evidence is not the type of opinion evidence contemplated by Evid. R. 405(A). The Staff Notes to Evid. R. 405(A) indicate that Ohio included opinion evidence because the distinction between reputation evidence and opinion evidence was negligible. Reputation evidence is defined in the Staff Notes to Evid. R. 405(A) as the "consensus of individual opinions, the general estimations of others." The psychologists in this case based their opinion upon the test results rather than their acquaintance with appellant in a community sense. Therefore, we conclude that the expert's opinion does not constitute proper character evidence.

However, even if expert opinions are admissible as character evidence under Evid. R. 405(A), such evidence in this case is inadmissible under R.C.2705.02(D) because it is evidence related to appellant's sexual activity.

Wherefore, we find appellant's ninth assignment of error not well-taken.

Having found that appellant was not prejudiced or prevented from having a fair trial, the judgment of the Lucas County Court of Common Pleas is affirmed.

*Judgment affirmed.*

HANDWORK P.J., GLASSER, J., concur.

Prior to his death, Judge John J. Connors, Jr., did participate in the decision-making process of this case.